IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────

SHANE T. LANCOUR,

                    Plaintiff,                          OPINION & ORDER

    v.

                                                               15-cv-105-wmc

HEATH PARSHALL,

                    Defendant.
───────────────────────────────────────────────────────────

*Pro se* plaintiff Shane Lancour was allowed to proceed past screening on a claim that defendant Heath Parshall, a police officer with the La Crosse Police Department, used excessive force against him in violation of the Fourth Amendment. Pending before the court is defendant's motion for summary judgment, which will be denied because there are genuine disputes of material fact regarding whether defendant's use of force was reasonable, and defendant has not shown that he is entitled to qualified immunity if those disputed facts were resolved against him at trial. Accordingly, this case shall proceed to trial. Finally, the court will also grant plaintiff's motion for assistance in recruiting counsel to represent him for the remainder of the case.

UNDISPUTED FACTS[1]

On June 8, 2013, defendant Parshall responded to a call regarding a domestic dispute involving plaintiff Lancour and his girlfriend, Brooke Olson. La Crosse police officer Jason Nesbit also responded to the call. Prior to that day, Parshall had not encountered Lancour, but Parshall was aware that Lancour had a history of arrests and contacts with law

───
[1] The court finds the following facts material and undisputed unless otherwise noted. The facts are drawn from the parties' proposed findings of facts and responses.

enforcement, including drug-related incidents. The dispatcher reporting the call gave a "universal precautions" warning with respect to Lancour, which Parshall understood as meaning he should exercise particular care for his own safety in dealing with Lancour.[2]

When Parshall and Nesbit arrived at the scene, Nesbit met with Lancour and told him that he would be taking Lancour to the police station. Audio and video footage from Nesbit's squad car confirm that he told Lancour the purpose of his being taken to the police station was for questioning about an unrelated investigation of another individual. Nesbit handcuffed Lancour, escorted him out of the apartment and placed him in the right rear of Nesbit's vehicle -- a four-door SUV. According to Lancour, Nesbit secured the seat-belt over Lancour's chest and waist. The video footage also shows that this interaction between Nesbit and Lancour was remarkably calm and respectful.

Meanwhile, Parshall interviewed Olson. Olson told Parshall that Lancour had assaulted her, that she was pregnant and that Lancour might be the father. After Parshall finished the interview, he went outside and opened the left rear door of Nesbit's vehicle -- the door opposite where Lancour was sitting. In a slightly raised voice and angry tone, Parshall asked, "What is your problem, hitting a pregnant woman?" According to Parshall, he chose to approach Lancour in this "assertive, no-nonsense" manner, as opposed to Nesbit's earlier friendly, low-key approach, because he believed it would be more effective in light of Lancour's history with law enforcement. Lancour responded, "What are you talking about?" Parshall then repeated his question, and Lancour responded in an agitated tone, "You don't know what the fuck you're talking about."

---

[2] Defendant provides no explanation as to why the dispatcher gave a "universal precautions" warning with respect to Lancour, nor even what a "universal precautions" warning generally means within the police department, beyond Parshall's own testimony about what he thought the warning meant.

Parshall then entered the vehicle, climbed across the seat and placed Lancour's head in a "pressure hold" by placing his right hand at the back of Lancour's neck, placing the other hand on Lancour's jaw, and turning Lancour's jaw. According to Parshall, he was worried that Lancour was going to spit on him and used the hold to ensure that Lancour's head was facing the other way. Parshall claims he was particularly worried because of Lancour's agitated state and because he knew Lancour was a drug user, which (again, according to Parshall) could mean that Lancour had a disease that could be transmitted through saliva, such as Hepatitis C. For his part, Lancour states that there was no reason for Parshall to believe Lancour was going to spit on him: he was sitting on the other side of the vehicle; he had not threatened to spit; and he was not engaging in any body language suggesting that he might spit.

The parties dispute the extent of force used by Parshall during the pressure hold.[3] Parshall states that he employed a "standard" pressure hold on Lancour, while Lancour contends that Parshall used an extreme amount of force, causing Lancour's head to hit the metal plate on the vehicle door and causing pain. At minimum, Lancour yelled, "You're fucking hurting me," and "get off my neck." Still, Parshall did not release Lancour immediately. Instead, he told Lancour not to spit on him. Lancour tried to yell a couple of times and then yelled, "Dude, I'm not fucking spitting on you, what the hell."

At about the same time, Nesbit interrupted, telling Parshall that he would talk to Lancour. Parshall then released Lancour. After a few more minutes, Nesbit took Lancour to the police station, where Parshall interviewed him about his girlfriend's allegations, as

---

[3] Unfortunately, the rear compartment video camera in Nesbit's vehicle was not working and did not capture the use of force incident. Some of the audio of the incident was, however, picked up by Nesbit's chest camera.

3

well as the unrelated fraud incident. Parshall ultimately released Lancour without charging him.

Since the incident, Lancour alleges experiencing jaw pain, jaw cracking and headaches, for which he has sought treatment. He has also experienced increased anxiety and difficulty sleeping since the incident.

OPINION

Defendant argues that he is entitled to summary judgment on grounds of qualified immunity because plaintiff cannot show that: (1) defendant's use of force was objectively unreasonable; or (2) that defendant violated clearly established law. *Carroll v. Carman,* — U.S. —, 135 S. Ct. 348, 350 (2014) ("A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). Both arguments fail.

I. **Legal Standard**

As an initial, but ultimately non-dispositive matter, defendant's qualified immunity argument is premised on the assumption that plaintiff's claim is governed by the Fourteenth Amendment, rather than the Fourth Amendment, which is likely not so. In particular, defendant argues that plaintiff's claim falls under the Fourteenth Amendment because plaintiff had already been "arrested" at the time defendant used force against him, but offers no definitive evidence that plaintiff had been arrested at the time defendant approached him in the squad car. For example, defendant has not submitted proof of any outstanding arrest warrants that would have supported an arrest of plaintiff; nor did defendant submit

4

evidence that plaintiff was arrested based on the allegations of his girlfriend. Instead, the evidence shows that plaintiff was merely placed in the squad car to be transported to the station for questioning about an unrelated fraud investigation in which he was not even a suspect. Moreover, the plaintiff was apparently never arrested or charged with any offense that day, whether related to his girlfriend's allegations of domestic violence or otherwise.

Ultimately, whether a person has been "seized," "arrested" and placed "in custody" is not what determines which constitutional standard applies. The Supreme Court has stated that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Plaintiff's claim in this case certainly falls into the category of alleged excessive force during the "course of an arrest, investigatory stop, or other 'seizure.'" Like plaintiff, the petitioner in *Graham* had already been handcuffed before the officers applied the physical force about which the petitioner complained. *See id.* at 389-90. The Supreme Court nonetheless decided that the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment, was the proper standard by which to measure the petitioner's claims. *See also Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (applying Fourth Amendment to analyze claim of alleged excessive force that occurred after arrest).

While there is a point at which, after a person is arrested, claims relating to the constitutionality of confinement and treatment pass from the Fourth to the Fourteenth Amendment's Due Process Clause, and even later after a conviction to the Eighth Amendment's Cruel and Unusual Punishment Clause, the Seventh Circuit has explained

5

that in cases in which the arrest was warrantless, the Fourth Amendment generally governs the period of confinement between the arrest and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause. *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Here, defendant has submitted no evidence that plaintiff was arrested pursuant to a warrant or that there was ever any judicial determination of probable cause to arrest.

Indeed, the *only* support defendant offers for his argument that plaintiff's claim is governed by the Fourteenth Amendment is a citation to *Wilkins v. May*, 872 F.2d 190, 193–95 (7th Cir. 1989), but here, too, defendant is in error. Although *Wilkins* held that the period between an arrest and a formal charge falls under the rubric of due process rather than the Fourth Amendment, the Seventh Circuit limited this holding in subsequent cases. *See Lopez*, 464 F.3d at 719 (discussing how *Wilkins* has been limited by later Seventh Circuit case law).

All that being said, it does not really matter to the outcome of defendant's pending summary judgment motion whether the Fourth or Fourteenth Amendment applies. As the Supreme Court explained in *Kingsley v. Hendrickson*, — U.S. —, 135 S. Ct. 2466 (2015), an objective reasonableness standard applies to excessive force claims brought under both the Fourth and Fourteenth Amendments. *See id.* at 2470. Under the objective reasonableness standard, force is excessive if it is unreasonable in light of the "facts and circumstances of the particular case." *Id.* at 2473. Factors that may be relevant to this determination include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit

6

the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* When this standard is applied to the present case, it is clear that summary judgment is not appropriate.

**II.     Reasonableness of Defendant's Use of Force**

Based on plaintiff's version of events, a jury could reasonably conclude that there was *no* need for force at all under the circumstances here. Plaintiff was handcuffed and confined in a squad car, and he was not actively resisting. At least according to plaintiff, his body language did not indicate that he was going to spit. Moreover, there is no dispute that plaintiff had been entirely cooperative up until the point when defendant confronted him in an accusatory and aggressive manner albeit verbally. Even after defendant entered the car and initiated the pressure hold, plaintiff told defendant that he was hurt *and* that he was not trying to spit. Still, defendant did not let go until another officer verbally intervened. If a jury credited all of these facts, much of them undisputed or at least corroborated by audio and even some video recordings, the jury could conclude that defendant's use of force was objectively unreasonable.

Even if a jury credited *defendant's* claim that he believed aggressive questioning was appropriate *and* that plaintiff *might* spit on him after he became agitated, the same jury could reasonably conclude that there were obvious ways for the defendant to avoid or diffuse that risk without using force against plaintiff. For example, defendant could have simply stepped out of the car or closed the door. He also could have tried switching tactics and speaking to plaintiff in a calmer manner. Instead, he chose to put himself at further

7

risk of being spit on by climbing further into the car and placing plaintiff's head in a pressure hold. All of these facts preclude summary judgment.

Finally, defendant cites several cases in an attempt to show that there was no "clearly established" law that prohibited the use of a pressure hold under the circumstances of this case. None of the cases are either controlling or on point. Here, the facts surrounding the underlying incident are in dispute. When those facts are construed in the light most favorable to plaintiff, a reasonable police officer was on notice at the time of the occurrence that plaintiff's conduct did not justify the sort of force described in his account. *See, e.g., Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (citing cases in which use of force was unreasonable where confined detainee was not resisting or presenting any threat). Accordingly, defendant's motion for summary judgment fails as a matter of law, and this case shall proceed to trial.

**III. Plaintiff's Request for Assistance in Recruiting Counsel**

Plaintiff has requested assistance in recruiting counsel in this case. (Dkt. #40.) Although plaintiff presented coherent legal arguments and was able to defeat defendant's motion for summary judgment, the court concludes that the difficulty of litigating his claim going forward, and certainly at trial, would exceed plaintiff's abilities. *See Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007). Accordingly, this case will be stayed while the court looks for counsel to represent plaintiff in an initial review and possible mediation, or ultimately at trial. After counsel has been recruited, the court will set a status conference to discuss a mediation and trial schedule for this case.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment (dkt. #31) is DENIED.

2. Plaintiff's motion for assistance in recruiting counsel (dkt. #40) is GRANTED as set forth above. The proceedings in this case are STAYED pending recruitment of counsel for plaintiff. If the court finds counsel willing to represent plaintiff, the court will advise the parties. Soon thereafter, a status conference will be held.

Entered this 18th day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge